**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SUZANNE M. MERRELL,**

                           **Plaintiff,**                **6:03-CV-447**

     **vs.**                                      **(NAM)**

**MICHAEL J. ASTRUE\*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

Hinman, Howard & Kattell, LLP         Eugene D. Faughnan, Esq.
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13901
_For Plaintiff_

Glenn T. Suddaby                     William H. Pease
United States Attorney for the         Assistant United States Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel               Barbara L. Spivak
Social Security Administration        Chief Counsel, Region II
16 Federal Plaza
New York, New York 10278          Arthur Swerdloff
_For Defendant_                        Assistant Regional Counsel

      \*\* On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the
Social Security Administration.  Pursuant to Federal Rule of Civil Procedure
25(d)(1), he is automatically substituted for former Commissioner Joanne B.
Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

                **MEMORANDUM-DECISION AND ORDER**

**I.**       **INTRODUCTION**

Plaintiff Suzanne Merrell brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for disability insurance benefits ("DIB").  Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.    BACKGROUND

Plaintiff was born on June 15, 1961, and was 41 years old at the time of the administrative hearing in October of 2002. (Administrative Transcript at p. 30).[1]  Plaintiff is single and lives alone.  (T. 30).  Plaintiff has a high school education.  (T. 34).  From 1992 until January of 1997, plaintiff was employed as a hardware salesperson. (T. 36-37).  Plaintiff's job duties included customer service, stocking, climbing ladders and walking. (T. 36).[2]

Plaintiff alleges that she sustained an injury to her back on January 30, 1997 while she was working at a Lowe's home center. (T. 124).  After her injury, plaintiff remained an employee of Lowe's, but worked "light duty" as a cashier and customer service representative due to pain in her lower back. (T. 37).   In August of 1998, plaintiff ceased all work activity allegedly as a result of the physical restrictions associated with her back pain.  (T. 37).  The office of Vocational and Educational Services for Individuals with Disabilities ("VESID") referred plaintiff to Vocational Rehabilitation Services, where she participated in a training program for computer and office skills.  (T. 106-107).  Plaintiff completed the program on April 27, 2001, having gained "the skills

---

[1]  Portions of the administrative transcript, Dkt. No. 4, filed by the Commissioner, will be cited herein as "(T.__)."

[2]  Plaintiff testified that she worked at Lowe's and at Sears in "retail hardware sales" and that both jobs had essentially the same duties/description. (T. 38).

necessary to obtain employment in the clerical field." (T. 108-110). Plaintiff claims she is disabled due to a lumbrosacral strain and sprain which causes chronic pain. (T. 11, 83).

**A**.     **Plaintiff's Medical Treatment**

Jonathan Briggs, FNP

The record indicates one visit with Jonathan Briggs at the Guthrie Medical Group on July 9, 1997. The visit is noted as a "workers' compensation follow-up visit". (T. 122). Dr. Briggs noted that plaintiff did not exhibit any tingling or numbness and had no difficulty ambulating. (T. 122). She complained of some discomfort in her lower back that was relieved with physical therapy and medication.[3] (T. 122). She was working as a cashier but she "does not feel that she is able to tolerate this". (T. 122). Upon examination, straight leg raising was negative, lower extremity strength, sensation were normal and plaintiff could heel-toe walk without difficulty. (T. 122). She exhibited a full range of motion in her spine with minimal discomfort. (T. 122). She was referred to an occupational therapist.[4] (T. 122).

Dr. John Brosnan

On September 26, 1998, Dr. Brosnan completed a "functional appraisal" for VESID. (T. 120-121). In that assessment, Dr. Brosnan noted that plaintiff had "no limitations" in her ability to sit, use her extremities, reach above her shoulders, use her fingers, hear or see. (T. 121). Further, plaintiff had no environmental limitations. (T. 121). Plaintiff was able to use public transportation and operate a motor vehicle without any assistance. (T. 121). Plaintiff could push, pull, carry or lift between 10 and 25 pounds. (T. 121). She had a 25% limitation in walking or

---

[3] The record is devoid of any reports or notations from any physical therapist.

[4] There is no report from any occupational therapist in the record.

3

standing and a 50% limitation in walking stairs, stooping, crawling, squatting and bending. (T. 121).

An MRI was taken of plaintiff's lumbar spine on September 15, 1998.[5] (T. 123).  The MRI did not reveal any discogenic degeneration, disc herniations or stenosis.  (T. 123).  The impression was "within normal limits".  (T. 123).

Dr. Saeed Bajwa

Dr. Brosnan referred plaintiff to Dr. Saeed Bajwa for a neurosurgical evaluation. (T. 154). Dr. Bajwa's initial exam, on February 4, 1999, revealed normal alignment and curvature of the spine. (T. 155).  He noted that the claimant had "mild to moderate paraspinal muscle spasm with tenderness in the posterior left SI joint area which [extended] toward the upper buttock."  (T. 155).  Dr. Bajwa concluded that plaintiff suffered from "left SI joint pain but with no evidence of radiculopathy"[6] and recommended that plaintiff undergo a CT-guided injection of the SI joint. (T. 156).

Dr. Bajwa examined plaintiff 13 times between February 5, 1999 and January 15, 2002. (T. 146-156, 223-226).  During his treatment of plaintiff, Dr. Bajwa provided plaintiff with a variety of medications for pain relief due to muscle spasms.  (T. 146-156, 223-226).  Dr. Bajwa also prescribed a transcutaneous electrical nerve stimulation ("TENS") unit to be used for pain control only after the suggestion was made by an IME doctor.  (T. 152).  Dr. Bajwa advised plaintiff to stay out of work after the November 8, 1999 visit. (T. 150).  In March of 2000, Dr.

---

[5]  Plaintiff claims that she underwent an MRI of the lumbosacral spine in 1997, however, the record is devoid of any MRI report other than the report of September 1998.  (Dkt. No. 5, p. 4).

[6]  Radiculopathy is a disease of the nerve roots.  *Dorland's Illustrated Medical Dictionary* 1595 (31st ed. 2007).

Bajwa noted that she may be able to return to "light duty" after some chiropractic treatment but until then, she is "100% disabled".[7] (T. 143).

According to Dr. Bajwa's records, from March 1999 until December 2000, plaintiff's straight leg raising was negative, focal and sensory deficits were normal. (T. 148-153). Plaintiff exhibited good strength and sensation. (T. 148-153). During this time, the examinations revealed no "abnormalities" and were "completely unremarkable and normal". (T. 148-153). From December 2000 until September 2001, the doctor noted that plaintiff's range of motion was restricted with straight leg raising positive between 70 and 75 degrees on one side. (T. 146-147). However, during this time, the neurological examination was still noted as being normal with the lower back pain "improved". (T. 146-147, 225-226).

On September 26, 2001, Dr. Bajwa completed a medical assessment of plaintiff's physical ability to perform work-related activities. (T. 219-222). The doctor concluded that plaintiff could frequently lift or carry less than ten pounds. (T. 219). Dr. Bajwa indicated that plaintiff could stand or walk for one hour and sit for two hours during an 8 hour work day. (T. 220). Plaintiff could not climb, balance, crouch, kneel, or crawl. (T. 220).

After an examination on October 15, 2001, Dr. Bajwa noted that plaintiff had "no limitation of spine movements" and "neurological examination is unremarkable and stable". (T. 224). During the last noted visit with Dr. Bajwa in January of 2002, plaintiff complained of pain in the left lower back radiating to the left buttock. (T. 223). Dr. Bajwa noted that the "neurological examination objectively does not show any focal abnormalities in any dermatomal

---

[7] The doctor's notes are devoid of any comments regarding her ability or inability to work after March 2000. (T. 149).

pattern". (T. 223).  The doctor also stated that plaintiff underwent an MRI which "does not show any evidence of bony or disc abnormality" and further that "the spinal canal is completely unaffected from compression".[8] (T. 223).  The doctor does not comment on plaintiff's work status and states that she does not have a follow up appointment scheduled with his office. (T. 223).

In a response to a letter from plaintiff's counsel dated October 24, 2002, Dr. Bajwa stated that his September 26, 2001 assessment of plaintiff's ability to do work was still valid.[9] (T. 233).

Dr. Paul Dougherty

On November 17, 1999, plaintiff began treating with chiropractor, Paul Dougherty, D.C.[10] From November 1999 until May 2000, her treatment consisted of manipulations. (T. 189-206). On April 12, 2000, Dr. Dougherty diagnosed plaintiff with "pain syndrome of the lumbosacral spine which originates at the type 2A transition segment on the let [sic]." (T. 126).  On May 26, 2000, Dr. Dougherty gave plaintiff a CT guided steroid injection. (T. 126-127).  The record indicates that plaintiff received chiropractic treatment from Dr. Dougherty until May 8, 2001. (T. 13).

Dr. James Kowalczyk

Dr. Dougherty referred plaintiff to Dr. Kowalczyk, a pain management specialist.  Dr. Kowalczyk  began treating plaintiff in January 2001 and examined plaintiff on four occasions. (T. 136-143).  Plaintiff complained of  "persistent low back pain radiating ot [sic] the upper gluteal

---

[8]   Again, the record does not contain any report of any MRI performed other than the MRI of September 1998.

[9]   The record does not contain any reports or notes of any treatment with Dr. Bajwa after January of 2002.

[10] Plaintiff claims that she treated with Dr. Doughtery "since the onset of her condition" however, the first submitted record of treatment is November of 1999. (T. 13, 206).

region, hip, anterolateral thigh, occasionally with symptoms below the knee into the calf." (T. 143). On January 3, 2001, January 24, 2001 and February 7, 2001, Dr. Kowalczyk performed a series of fluoroscopic-guided left L5 and S1 facet medial branch blocks. (T. 137-145). Plaintiff returned to Dr. Kowalczyk on March 30, 2001 for a follow-up evaluation. (T. 136). Dr. Kowalczyk noted that the series of lumbar facet medial branch blocks briefly provided an improvement in plaintiff's symptoms of pain. (T. 136). However, in the five weeks prior to the follow-up appointment, plaintiff reportedly experienced a gradual return and increase in symptoms of pain "originating in the low back, traversing the upper gluteal region, hip, [and] anterior thigh." (T. 136). Plaintiff also "had some radiation of symptoms into the left groin." (T. 136). On examination, Dr. Kowalczyk observed that plaintiff could forward flex to approximately 70 degrees, but had difficulty returning to neutral. (T. 136). Plaintiff had good muscle tone and bulk in her lower extremities without evidence of atrophy. (T. 136). Dr. Kowalczyk concluded that plaintiff was suffering from persistent lumbar osteoarthropathy, and provided her with prescriptions for pain relievers and muscle relaxers and noted that he would request authorization for radio-frequency ablation (rhizotomy) of left sided lumbar facets L3 and S1. (T. 136).[11]

Dr. L. Martin

Dr. Martin began treating the plaintiff in April of 2002.[12] (T. 228 - 230). The doctor noted that plaintiff had "chronic low back pain". (T. 230). Plaintiff saw the doctor again in May of

---

[11] Rhizotomy is the division of a spinal nerve root. *Dorland's Illustrated Medical Dictionary* 1666 (31st ed. 2007) . Other physicians make reference to the rhizotomy procedure, however, the record does not contain any reports from Dr. Kowalczyk confirming that the procedure was actually performed.

[12] The record does not provide any information regarding Dr. Martin's specialty.

2002 for a refill of her pain medication. (T. 228).  The last record of treatment with Dr. Martin was on September 27, 2002.  (T. 228).  During that visit, plaintiff complained that her back was worse in damp weather.  (T. 228).   Dr. Martin diagnosed plaintiff with L5 disc disease with radiculopathy requiring treatment with anti-inflammatories. (T. 239).  In response to a letter from plaintiff's counsel dated October 24, 2002, Dr. Martin concurred with the functional assessments provided by Dr. Bajwa. (T. 240).

**B.     Consultative Examinations**

Dr. William Bauman

William Bauman, D.C., performed consultative chiropractic examinations of plaintiff at the request of the agency on October 23, 2000 and March 19, 2001.  (T. 129 - 135).   During the first consultation, plaintiff informed Dr. Bauman that she had injured her lower back and was experiencing pain into the gluteal regain and numbness from the hip and posterior thigh down to the knee primarily on the left. (T. 132).  Dr. Bauman concluded that plaintiff suffered from a lumbar sprain/strain with radiculopathy superimposed on degenerative disc disease. (T. 134).  He further concluded that plaintiff had mild to moderate limitations and would be able to sit and do computer work for up to five hours a day. (T. 134).  The opinions and diagnosis of the examiner were unchanged during the second examination in March of 2001.  (T. 131).

Dr. John Austin

On May 29, 2001, the plaintiff underwent an orthopedic examination by John Austin, M.D. at the request of the agency.  (T. 207).   During the examination, plaintiff was able to heel - toe walk without difficulty. (T. 208).  She was able to squat the full distance with great difficulty. (T. 208).  She did not need any assistance climbing on or off the table. (T. 209).   Plaintiff

reported that she could cook, clean her house, run errands, do her laundry and do some gardening. (T. 208).   The examination revealed tenderness over the left sacroiliac area and downwards towards the sciatic notch. (T. 209).  Straight leg raising was negative to 80 degrees while seated. (T. 209). The plaintiff exhibited difficulty with the left leg while lying down and was only able to raise the leg 40 degrees. (T. 209). Muscle spasms were present in the back. (T. 209). Range of motion was "good" as she was able to bend 60 degrees and extend 20 degrees. (T. 209).  Lateral bending and twisting were unimpaired. (T. 209).   Dr. Austin determined that the claimant suffered from "[r]adicular-type pain, left leg, and persistent numbness in a distribution of the left posterior thigh, calf, and feet."  (T. 209).  Plaintiff's prognosis was "guarded," and the doctor concluded that the plaintiff had a mild to moderate limitation to standing, sitting, and walking for prolonged periods of time. (T. 209).  Dr. Austin opined that plaintiff was mildly to moderately limited in her ability to lift, carry, push, pull, stand, and bend due to her chronic back pain.  (T. 209).

Residual Functional Assessment

The record also contains a Physical Residual Functional Capacity ("RFC") Assessment form dated June 19, 2001 completed by a non-physician disability analyst. (T. 212).  The analyst concluded that plaintiff could frequently lift and carry up to ten pounds, stand, walk or sit for about six hours in an eight hour workday and engage in unlimited push/pull activity. (T. 212-218).

III.    PROCEDURAL HISTORY

Plaintiff filed an application for Social Security disability insurance benefits ("DIB") on April 25, 2001.  (T. 67-69).  The application was denied on June 21, 2000.  (T. 51-55).  Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ") which was held on October 8, 2002. (T. 10). On November 6, 2002, ALJ Daniel N. Shellhamer issued a decision denying plaintiff's claim for disability benefits. (T. 7-18). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner on March 14, 2003. (T. 4). This action followed.

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in gainful activity since the filing date of her application. (T. 11). At step two, the ALJ concluded that plaintiff suffered from "lumbosacral strain and sprain," which qualified as a "severe impairment" within

the meaning of the Social Security Regulations (the "Regulations").  (T. 11).  At the third step of the analysis, the ALJ determined that plaintiff's impairment did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations.  (T. 12). The ALJ found that plaintiff had the residual functional capacity ("RFC") to  "lift and carry up to ten pounds frequently, sit for six hours, and stand and/or walk for up to two hours in an eight-hour workday."  (T. 15).  Therefore, at step four, the ALJ concluded that plaintiff was unable to perform all of her past relevant work. (T. 15).  Relying on the medical-vocational guidelines ("the grids") set forth in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2, the ALJ found that plaintiff has the exertional capacity to perform the demands of the full range of sedentary work.  (T. 16). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act.  (T. 17).

## V.    DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that the only dispute is to the plaintiff's Residual Functional Capacity. (Dkt. No. 5, p.7).[13]   Plaintiff asserts that:  (1) the ALJ improperly relied on the non-examining consultative report to determine plaintiff's RFC and her ability to perform sedentary work; (2) the

---

[13]  Plaintiff concedes that there is no dispute as to the appropriate findings for steps one through four. (Dkt. No. 5, p. 7).

ALJ improperly discounted the opinions of plaintiff's treating physicians; (3) the ALJ improperly discounted plaintiff's allegations of pain; and (4) plaintiff presents non-exertional impairments which require the use of a vocational rehabilitation expert rather than reliance upon the grids. Plaintiff further argues that no purpose would be served by remanding the case and therefore, asserts that the Court should enter a finding of disability. (Dkt. No. 5).

**A.      Residual Functional Capacity**

The ALJ determined that plaintiff has the residual functional capacity to lift and carry up to ten pounds frequently, sit for six hours and stand and/or walk for up to two hours in an eight-hour workday.  (T. 15).  Accordingly, the ALJ found that plaintiff could perform a full range of sedentary work.  (T. 17).   Plaintiff challenges this determination arguing that the ALJ ignored the opinions of plaintiff's treating physicians and improperly relied upon the functional capacity assessment of a non-examining consultative physician.  Plaintiff further argues that the ALJ improperly discounted plaintiff's allegations of pain. (Dkt. No. 5, p. 8).

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing

basis. 20 C.F.R. § 404.1545(a). Evidence that a plaintiff is capable of participating in various activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980).

In this case, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work. Sedentary work is the least rigorous of the five categories of work recognized by Social Security Administration regulations and is defined as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); *see also Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000). The ALJ determined that plaintiff could lift and carry up to ten pounds frequently, sit for six hours and stand and/or walk for up to two hours in an eight hour workday. (T. 15).

Initially, plaintiff asserts that the ALJ misdefined the word "occasionally". (Dkt. No. 5, p. 8). Plaintiff argues that an activity is performed "occasionally" in a workday if an individual "has the ability to perform that activity up to one-third of the eight hour workday".[14] (Dkt. No. 5, p. 8). However, the term "occasionally" is defined as "occurring from very little up to one third of the time, and would generally total no more than about 2 hours of an 8-hour workday". *Algarin v. Barnhart*, 2007 WL 528889, at *9 (W.D.N.Y. 2007); SSR 96-9p. Therefore, the Court rejects plaintiff's claim that in order to perform a sedentary job, she must be able to stand and walk for 2 ½ to 3 hours in an eight hour workday. The Court turns to plaintiff's remaining arguments relating to the RFC assessment.

---

[14] Plaintiff provides no citations or any legal authority to support this assertion.

### 1.  Treating Physician Rule

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physicians, Dr. Bajwa and Dr. Martin.[15]  Plaintiff further claims that the ALJ improperly relied upon the assessment of a non-examining consultative physician for the Social Security Administration. (Dkt. No. 5, p. 9).

Under the regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2) (2001); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2).  Additionally, the regulations direct the Commissioner to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion".  *Id*.; accord 20 C.F.R. 416.927(d)(2).

An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so.  *Barnett v. Apfel*, 13 F. Supp.2d 312, 316 (N.D.N.Y. 1998).

---

[15] Plaintiff does not make any argument regarding the ALJ's assessment of Dr. Brosnan's records and opinions.

The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  An opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported.  20 C.F.R. § 404.1527(d)(3), 416.927 (d)(3); *see also Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007).  Similarly, the less consistent an opinion is with the record as a whole, the less weight it is to be given. *Stevens*, 473 F.Supp.2d at 362; *see also Otts v. Comm'r of Social Sec.*, 2007 WL 2914449, at *2 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician upon the identification of good reasons, such as substantial contradictory evidence in the record).   Genuine conflicts in the medical evidence are for the Commissioner to resolve. *Veino*, 312 F.3d at 588.

The final question of disability is expressly reserved to the Commissioner. *See Snell*, 177 F.3d at 134; 20 C.F.R. §404.1527(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133.  Thus, a treating physician's disability assessment is not determinative. *Snell*, 177 F.3d at 133; *Murphy v. Barnhart*, 2003 WL 470572, at *7 (S.D.N.Y. 2003) (the ALJ is not required to give controlling weight to a treating physician's opinions as to the ultimate issue of whether the claimant meets the statutory definition of disability).

In this case, the ALJ afforded the opinions of plaintiff's treating physicians the appropriate weight. The ALJ discussed the Medical Assessment of Ability to do Work-Related Activities (physical) completed by Dr. Bajwa on September 26, 2001 and October 24, 2002. In those assessments, Dr. Bajwa concluded that the plaintiff could "frequently lift and carry less than ten pounds, stand or walk for one hour and sit for two hours in an eight-hour workday". (T. 14). Further, Dr. Bajwa opined that plaintiff could not engage in "climbing, balance, and crouching, kneeling or crawling type activities or be around unprotected heights or moving machinery". (T. 14). Dr. Bajwa checked boxes on the pre-printed form but provided no narrative regarding the condition or any support for his opinions. (T. 219-222). Further, the last page of the report requests "the medical findings that support this assessment". (T. 222). That page was left blank by the doctor. (T. 222). The Assessment does not provide any explanation of plaintiff's limitations or how he reached his conclusions. *See Stevens v. Barnhart*, 473 F.Supp.2d 357, 361 (N.D.N.Y. 2007). In October 2002, the doctor noted that his September 2001 assessment was still valid. (T. 232-233). However, the assessment in October 2002 is not based upon any recent examination of plaintiff. Dr. Bajwa's last examination of plaintiff contained in the record was 9 months prior to the completion of that assessment. (T. 223).

The ALJ discussed this report in the decision stating that he assigned "little weight to these assessments, as they are inconsistent with the preponderance of the medical evidence of record." (T. 14). The ALJ properly examined evidence from plaintiff's treating physicians and consultative examiners in the decision. The ALJ summarized the records and reports of all treating physicians and examiners in the decision. Dr. Bajwa's assessments are inconsistent with the medical records of other treating physicians and the consultative examiners. Indeed, the

assessments are not supported by Dr. Bajwa's own medical records or by objective medical evidence.

In 1998, Dr. Brosnan, one of plaintiff's treating physicians, concluded that plaintiff had "no limitations" in her ability to sit, use her extremities, reach above her shoulders, use her fingers, hear or see. (T. 121). Dr. Brosnan further opined that plaintiff could push, pull, carry or lift between 10 and 25 pounds. (T. 121). She had a 25% limitation in walking or standing and a 50% limitation in walking stairs, stooping, crawling, squatting and bending. (T. 121). The ALJ properly afforded more weight to the opinion of Dr. Brosnan as it was consistent with the objective clinical findings and not based upon the plaintiff's subjective complaints. *See Stevens*, 473 F.Supp.2d at 364.

Plaintiff's clinical data is almost entirely normal. The MRI in 1998 did not reveal any degeneration, herniations or stenosis. (T. 123). The impression was "within normal limits". (T. 123). Further, even though the record does not contain any evidence of any MRI in 2002, Dr. Bajwa states that he reviewed the report and describes the findings with no "abnormality". (T. 223). Throughout Dr. Bajwa's reports, he continually describes plaintiff as neurologically "completely unremarkable and normal". (T. 148). Although the doctor noted that plaintiff's back was "tender" and exhibited "spasms", he also noted that her lower back pain had improved. (T. 226). Further, on October 15, 2001, he noted that plaintiff "does not have any limitation of spine movements" and her neurological examination was "unremarkable and stable". (T. 224). The notes merely repeat the complaints of pain and state the current treatment. *See Filoramo v. Apfel*, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that ALJ properly discounted assessment of

treating physician as it was not consistent with opinions of other treating and consulting physicians).

Moreover, plaintiff's own testimony provides support for the rejection of Dr. Bajwa's assessments.  Plaintiff testified that she needs to climb 16 steps to her home. (T. 30).  She testified that she spends most of her day "playing on the computer". (T. 44).  She does light housekeeping including sweeping, vacuuming, laundry and cooking. (T. 45).  She also testified that she goes to church and is able to drive herself. (T. 34).  Although Dr. Bajwa stated that she was unable to sit without interruption for more than 15-20 minutes (T. 220), plaintiff testified that she is able to drive 45 minutes to her chiropractor's office. (T. 34).

Thus, the ALJ applied the proper legal standard and weight to Dr. Bajwa's opinions.  Accordingly, plaintiff's argument in this regard is without merit.  While the ALJ could have provided a more detailed explanation for the weight given to Dr. Bajwa's opinion, given the lack of evidence supporting the opinion, the ALJ's assessment was proper. *See Johnson v. Astrue*, 2008 WL 141115, at *7 (W.D.N.Y. 2008) (citing *O'Connor v. Chater*, 1998 LEXIS 24514, at *4-5 (2d Cir. 1998)).  In rejecting a claim of disability, an ALJ is not required to reconcile explicitly every conflicting shred of medical testimony.  *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).  Furthermore, even if the ALJ gave Dr. Bajwa's opinion "controlling weight", it would not alter the outcome of this case as the doctor did not conclude that the plaintiff could not perform a full range of sedentary work.  *See Loturco v. Barnhart*, 2005 WL 1041140, at *8 (S.D.N.Y. 2005).

The ALJ considered the regulations in refusing to give controlling weight to Dr. Bajwa's opinion regarding the plaintiff's functional limitations. *See Hogue v. Barnhart*, 2005 WL 1036336, at *13-14 (S.D.N.Y. 2005).  This Court finds substantial evidence to support the ALJ's

determination that Dr. Bajwa's opinions regarding plaintiff's functional limitations are inconsistent with the evidence in the record.  Therefore, the ALJ's failure to afford the opinions of Dr. Bajwa, regarding plaintiff's alleged disability, greater weight was not erroneous.  *See Jones v. Barnhart*, 2003 WL 941722, at *10 (S.D.N.Y. 2003) (special significance is not given to treating source opinions that a claimant is "disabled" or is unable to work, as determinations of this kind are strictly reserved to the ALJ).

### 2.      Reliance upon reports of consulting examiners

Plaintiff argues that the ALJ improperly relied upon the opinion of a non-examining consultant in making his determination. (Dkt. No. 5, p. 10).  Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated.  In determining how much weight to grant a medical opinion several factors are considered including:  (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion, i.e. '[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight' that opinion is given; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (v) other relevant but unspecified factors. *Schisler*, 3 F.3d. at 567 (citing 20 C.F.R. § 404.1527(d)(1) (d)(6); 20 C.F.R. § 416.927(d)(2)).

Under 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the opinions of treating physicians.  *See Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir. 1999) (two treating physician's reports not entitled to controlling weight because they were inconsistent with the findings of several consultative examinations); *Cruz v. Barnhart,* 2006 WL 1228581, at *11-14

(S.D.N.Y. 2006) (holding that consultative examinations given controlling weight over treating physician's opinion that was not consistent with the medical record, the claimant's daily activities or the opinions of other physicians); *Punch v. Barnhart*, 2002 WL 1033543, at *12 (S.D.N.Y. 2002) (concluding that "the report of a consultative physician can contribute substantial evidence" in overriding opinion of treating physician).

In this case, the opinions of the consulting examiners are supported by objective testing. Dr. Austin noted that plaintiff had full muscle strength in the lower extremities with the exception of the left ankle. (T. 209). There was no loss of sensation or atrophy. (T. 209). These findings are consistent with the findings of Dr. Bajwa and Dr. Kowalczyk who stated that plaintiff had "good strength and sensation", normal range of motion and "unremarkable" examinations (T. 136-143, 148-153) and with the MRI report of September 1998. Thus, the ALJ properly relied upon the reports of the consultants in his decision. *See Filoramo*, 1999 WL 1011942, at *8 (holding that the consultants provide objective findings that support their assessments as each report discusses the physical examination and draws conclusions from the exam).

### 3.      Plaintiff's Complaints of Pain

Plaintiff claims that the ALJ applied the incorrect legal standard in evaluating the credibility of her complaints of pain and that the ALJ's rejection of plaintiff's subjective complaints is not supported by substantial evidence. (Dkt. No. 5, pp. 11-13). Plaintiff asserts that her complaints are supported by medical reports.

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27

(2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, 615 F.2d at 27; *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).  When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp 604, 608 (S.D.N.Y. 1987).  If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's

decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).   A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591  (quotations and other citations omitted).

In this case, the ALJ determined that:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's description of her activities and lifestyle; the degree of medical treatment required; discrepancies between the claimant's assertion and information contained in the documentary reports; the claimant's demeanor at the hearing; the reports of the treating and examining practitioners; the medical history; the findings made on examination; the claimant's assertions concerning her ability to work. (T. 15)

Having reviewed the record, this Court is satisfied that the ALJ utilized the proper legal standards in his analysis of plaintiff's complaints of pain.  Further, the Court finds that there is substantial evidence to support the ALJ's decision to discredit plaintiff's complaints of disabling pain.

The ALJ found that plaintiff's own testimony regarding her condition, activities, and treatment, were unsupported by the objective medical evidence.  (T. 17).  In discrediting plaintiff's complaints of disabling pain, the ALJ referenced plaintiff's testimony regarding her daily activities, and ability:

> Ms. Merrell testified that she has chronic pain in her back.  Ms Merrell stated that she could walk for about twenty minutes, and lift a bag of groceries without difficulty.  She stated that she drives to her doctor appointments and that the drive to her doctor's office is about 45 minutes from her house.  She further testified that she went to vocational training courses for 2 ½ years, five days a week, 2 ½ hours a day.  She stated that on a typical day, she will work on her computer, do some gardening, walk around the yard and do light housework and cooking. (T. 14).

In addition to the testimony cited by the ALJ, plaintiff further stated that she lives alone, sweeps the floors, vacuums, does laundry, cooks for herself, and goes to church. (T. 30, 33, 44-46). The consultative examiner, Dr. Austin, noted that plaintiff needed no assistance dressing or climbing on/off the examining table. (T. 209).  Plaintiff's MRI studies were "within normal limits". (T. 123, 223).  There are no objective tests in the record that would indicate that the plaintiff's back pain renders her unable to perform light work.  *See Filoramo v. Apfel*, 1999 WL 1011942, at *9 (E.D.N.Y. 1999) (plaintiff's allegations of disabling pain not supported by objective evidence as doctors' notes indicate straight leg raising was normal, no sensory deficit or  muscle atrophy noted, and plaintiff walked with normal gait); *see also Pareja v. Barnhart*, 2004 WL 626176, at *10 (S.D.N.Y. 2004) (plaintiff's complaints of pain contradicted by medical opinions of reviewing and treating physicians).

The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of consistent and disabling pain.  *See Stevens v. Barnhart*, 473 F.Supp.2d 357, 365 (N.D.N.Y. 2007).  The ALJ adequately specified the reasons for discrediting plaintiff's statements.  Further, the ALJ's decision to reject such complaints are supported by substantial evidence.  Accordingly, plaintiff's argument is without merit.

**B.**	**Application of the Grids**

Plaintiff objects to the ALJ's use of the Medical-Vocational Guidelines (the "Grids") in reaching the conclusion that she is "not disabled" for purposes of social security benefits.  Plaintiff states that the existence of "chronic and disabling pain as well as other nonexertional impairments including the side effects from medication" warrant the use of a vocational expert. (Dkt. No. 5, p. 14). Plaintiff further argues that the substantial weight of the evidence supports an RFC for substantially

less than the full range of sedentary employment. (Dkt. No. 5, p. 14).  Therefore, the grids are

inapplicable and the failure to utilize a vocational expert is reversible error.  *Id*.

Under the Social Security Act, the Commissioner bears the burden of proof for the final

determination of disability.  *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996).  Generally speaking, if

a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden

by resorting to the applicable grids.[16]  *Pratt*, 94 F.3d at 39.  The grids "take[ ] into account the

claimant's residual functional capacity in conjunction with the claimant's age,

 education and work experience".  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).   Ordinarily,

the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the

applicable medical vocational guidelines (the grids)".  *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404,

Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not

automatically require the production of a vocational expert or preclude reliance" on the grids.[17]  *Bapp

v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  The testimony of a vocational expert that jobs exist in

the economy which claimant can obtain and perform is required only when "a claimant's

nonexertional impairments significantly diminish his ability to work-over and above any incapacity

---

[16]  An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, *10, n. 12 (S.D.N.Y. 1998).

[17]  A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(I), (ii), (iv), (v), 416.969a(a), (c)(I), (ii), (iv), (v); *see also Rodriguez v. Apfel*, 1998 WL 150981, *10, n. 12 (S.D.N.Y. 1998).

caused solely from exertional limitations - so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Bapp*, 802 F.2d at 605-06.  The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity".  *Bapp*, 802 F.2d at 606.  Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp,* 802 F.2d at 604).   Therefore, when considering nonexertional impairments, the ALJ must first consider the question - whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony.  *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

In this matter, plaintiff allegedly suffers from chronic back pain, fatigue and side-effects of medication.[18]  (Dkt. No. 5, p, 14).  The ALJ reasoned that:

> The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all of the seven primary strength demands required by work at the given level of exertion and there are no nonexertional limitations. (T. 16).

The ALJ considered plaintiff's nonexertional limitations and determined they were not significant, and therefore, properly relied upon the grids in determining that she was capable of sedentary work. *See Niven v. Barnhart*, 2004 WL 1933614, at *7 (S.D.N.Y. 2004). Although the ALJ

---

[18]  Plaintiff refers to "side effects of medication" without elaborating what side effects she allegedly suffers from.  (Dkt. No. 5, pp 13-14).

did not expressly state that plaintiff's chronic pain and fatigue were not nonexertional impairments, the ALJ directly addressed the issue throughout the opinion in detail. *See Niven*, 2004 WL 1933614, at *8 (holding that although the ALJ did not state that plaintiff's impairments were insignificant, the ALJ directly addressed the impact of the nonexertional impairments).

In her objections, plaintiff fails to allege any nonexertional work demands that she cannot perform because of his alleged impairments. In addition, plaintiff's medical records are devoid of any reference to any nonexertional limitations or restrictions. *See Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *13 (S.D.N.Y. 2007). Although plaintiff claims that her chronic pain constitutes a nonexertional limitation, as discussed above, there is substantial evidence to support the ALJ's conclusion that plaintiff's complaints of chronic pain were not totally credible.

With respect to plaintiff's claim of fatigue, plaintiff only argues that she suffers from fatigue and "other side effects from medication". She does not elaborate or cite to any medical records or reports of any consultative or treating physician which supports these claim. Thus, the ALJ properly found that there was no basis on which to conclude that fatigue or other side effects would significantly diminish plaintiff's range of work. *See Rodriguez*, 1998 WL 150981, at *10 (holding that plaintiff's claims of pain and drowsiness from medications were not supported by the medical evidence and were not credible, therefore, the non-exertional impairments did not "significantly diminish" her work capacity such that she could not perform the full range of sedentary employment as indicated by the grids).

Thus, the Court finds that the ALJ properly considered plaintiff's pain and fatigue and determined they would not significantly diminish her range of work to deprive her of meaningful employment. As such, the ALJ did not err in failing to request the presence of a vocational expert

to determine whether plaintiff could perform light work.  *Elias v. Apfel*, 54 F.Supp.2d 172, 178 (E.D.N.Y. 1999) (holding that the ALJ specifically noted that plaintiff's symptoms were not of sufficient severity, frequency, and duration so as to cause disability and significantly diminish his ability to perform light work).   Accordingly, the Court finds this claim to be without merit.

**VI.     CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: August 29, 2008
      Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge